IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Miscellaneous Action No. 20-mc-00011-WJM-MEH

UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,

    Petitioner,

v.

FRAN GOMEZ, Interim Sheriff, City of Denver,

    Respondent.

## ORDER

**Michael E. Hegarty, United States Magistrate Judge**.

The United States Immigration and Customs Enforcement (ICE) served administrative subpoenas on the Sheriff for the City and County of Denver, Colorado. The subpoenas sought information related to three aliens who are or recently have been in the Sheriff's custody on criminal charges. These three persons are as follows[1]:

> (1) Olman Ramirez-Ramirez, convicted in the District of Arizona on May 11, 2012 of Illegal Entry under 8 U.S.C. § 1325 (subsection unknown); and convicted in this Court on December 16, 2013 (13-cr-00341-RM) of Illegal Re-entry After Deportation Subsequent to a Conviction for a Felony Offense under 8 U.S.C. § 1326(a) and (b)(1);
>
> (2) Cecilio Torrez-Ibarra, convicted in the Southern District of Texas on August 12, 2011 of Knowingly and Unlawfully Entering the United States at a Place other than as Designated by Immigration Officers under 8 U.S.C. § 1325(a)(1); and
>
> (3) Juan Miguel Sanchez-Martin, convicted in the District of Arizona on July 26, 2002 of Illegal Entry under 8 U.S.C. § 1325 (subsection unknown); and also convicted in the Western District of New York on January 29, 2010 of Illegal Re-

---

[1] The offenses listed here are limited to federal convictions. ICE alleges numerous state convictions for each of the three subjects, including controlled substance possession/distribution, false information, driving while ability impaired, driving under the influence, theft, battery, and other crimes.

entry After Deportation Subsequent to a Conviction for a Felony Offense under 8 U.S.C. § 1326(a) and (b)(1).[2]

ICE represents it is investigating these persons, each of whom has been previously removed from the United States and then re-entered illegally. ICE states that based on information it has, each of the three persons may be subject to removal from the United States and/or potential criminal prosecution. The subpoenas were served on the Sheriff on January 13, 2020, with return dates of January 16, 2020 (for Sanchez-Martin) and January 27, 2020 (for the other two). The Sheriff notified ICE on January 16, 2020 that it would not comply with the subpoenas. After attempts between the parties to resolve the matter, ICE filed this proceeding to enforce the subpoenas on February 6, 2020. The matter is fully briefed, and neither party has requested an evidentiary hearing or oral argument.

## **GOVERNING LAW**

ICE issued the subpoenas under 8 U.S.C. § 1225(d)(4)(A):

> The Attorney General and any immigration officer shall have power to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service, and to that end may invoke the aid of any court of the United States.

A United States district court in the jurisdiction where the investigation is being conducted may issue an order requiring compliance with the subpoena. *Id.* § 1225(d)(4)(B). Here, the subpoenas sought addresses (home and employment), place of birth, age, government-issued identification documents, bond release information (including obligor name/address), FBI number, emergency contact address/telephone number, and documents concerning the current offense in the City and

---

[2]The Sheriff alleges that Sanchez-Martin has recently been indicted in federal court, presumably in the District of Colorado (although not explicitly stated).

County of Denver.

Both sides agree that an administrative subpoena such as this "is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). They also agree that if the "material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *McLane Co. v. E.E.O.C.*, 137 S. Ct. 1159, 1165, 197 L. Ed. 2d 500 (2017), *as revised* (Apr. 3, 2017) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 61–62 (1984)). The Sheriff adds (in the context of an IRS summons) that the Supreme Court has stated a court may not permit the administrative subpoena process to be abused; such abuse might be that the subpoena was issued for an improper purpose or any purpose that might "reflect on the good faith of the particular investigation." Further, the agency must show that the information is not already within its possession. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).[3]

## ANALYSIS

**I.    Objections to the Subpoenas**

The Sheriff makes the following objections to the subpoenas.

A.    <u>Improper Expenditure of Public Safety Resources</u>

Sprinkled throughout the Sheriff's response brief are references to objections based on the expenditure of funds in responding to the subpoenas. I believe this is more of a philosophical objection than one based on actual cost. Of course, subpoenas are a daily occurrence in legal proceedings before all levels of courts–local, state, and federal. In every instance, the recipient has some incremental cost in responding, whether it be employee time or copying expense. In situations

---

[3]ICE disputes the applicability of *Powell* because of the distinct circumstances of that case.

3

where the financial burden is significant, a court has the authority to reallocate costs. *E.g., In re Application of Michael Wilson & Partners, Ltd., for Judicial Assistance Pursuant to 28 U.S.C. 1782*, 520 F. App'x 736, 737 (10th Cir. 2013). No such request has been made here, nor do I perceive that the cost of providing readily available information contained in an arrested person's criminal file will be significant.

B. Lack of Good Faith/Improper Purpose

The Sheriff raises several arguments arising out of the current national conflict between state and local governments and the United States in the execution of immigration laws and policies (colloquially referred to as the "sanctuary movement" or similar term). Such arguments include ICE announcing changes in its approach to apprehending illegal aliens, including ICE having "[n]ever serv[ed] a subpoena on a local government in the 68 years ICE (or INS) has had subpoena authority." Resp. at 3. To the extent these arguments raise political questions, they are beyond the constitutional reach of this Court. *E.g.*, *Flast v. Cohen*, 392 U.S. 83 (1968) (expressing that "generalized grievances about the conduct of government" is beyond that which is "traditionally thought to be capable of judicial resolution"). In this proceeding the Court must determine whether the subpoenas should be enforced based on the application of the law cited above.

The Sheriff also asserts that Denver already complies with "release notification requests" or detainers issued by the United States, and that such compliance permits ICE to apprehend subject individuals when they are released from custody. However, the issue before the Court is not such requests by ICE or the Sheriff's responses but, rather, the validity of the subject subpoenas. I do not believe that, if true, ICE's failure to take these three individuals into custody (with advanced notice, as stated by the Sheriff, of anywhere from 48 to 122 minutes) establishes that ICE is proceeding in bad faith or for an improper purpose.

As ICE states, under the *Powell* standard (if it applies), the government has a slight burden in demonstrating good faith which, if met, shifts to the person opposing an administrative subpoena, who has a "heavy burden" in establishing the failure of the government to act in good faith. *E.g., High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019). Based on the background of the three persons who are the subject of the subpoena and ICE's proffer of the nature of its interest in the information, ICE's burden has been met. However, I do not believe the Sheriff has established bad faith. There is no improper purpose evident on this record, such as, for example, the government using the subpoenas as a pretext for some unstated, nefarious, legally inappropriate reason. I understand the Sheriff's complaints about a change in the exercise of discretion that ICE's use of administrative subpoenas might entail, but that is a matter of political discussion and not an appropriate consideration for this Court.

### C.   ICE Already Has the Information

The Sheriff states that ICE already has access to all information requested in the subpoenas. This is a valid point. ICE admits that it *has* "biometric data for each of the aliens." Reply at 10. ICE asserts it *needs* "up-to-date address information, including any personal or work addresses provided by the aliens upon arrest, their emergency contacts' address information, or any bond obligor's address information." ICE also states it does not have documents these three persons might have supplied upon arrest, or information showing the basis for the current criminal charges. Therefore, the Sheriff need not provide biometric data.

### D.   The Information Sought Is Too Indefinite

In putting forward this argument, the Sheriff does not contend that the information sought is not discernable or unavailable, but rather that he should not be forced to spend public safety resources responding to subpoenas on top of what the Sheriff's Department has already done in

responding to ICE's release notification requests. The Sheriff has failed to establish the indefiniteness of the information sought.

### E. The Information Sought Is Not Reasonably Relevant

Again, the Sheriff offers no basis to challenge the relevance of the information sought, but rather that the originally stated purpose of the subpoenas was enforcement of civil immigration laws and not criminal laws. The Sheriff implies that ICE relied upon enforcement of civil immigration laws in issuing the subpoenas but now has changed course and wants the information to pursue potential criminal charges. However, either motive is legally permissible and not improper under the governing law. The information sought is directly relevant to the purpose of ICE locating and potentially apprehending these three persons.

### F. Tenth Amendment

The Sheriff challenges the legality of ICE subpoenas issued to the City and County of Denver, without citing any authority to that effect other than the lack of specific language in the statute explicitly applying to local governments. The Sheriff also decries ICE's attempt to use the Sheriff's Department in helping ICE perform its duties. Again, this is a grievance about the manner in which the federal government is applying immigration laws and not a clear basis under the statute to refuse to comply with legal process. The Sheriff also invokes the mandate that under the Tenth Amendment to the Constitution, the federal government may not "directly 'commandeer' state or local governments into the service of the federal immigration authorities." Resp. at 12. Although there might be some point at which requiring ongoing cooperation could constitute "commandeering," I do not believe a sterile request for specific identifying information comes close. Even the United States is subject to production of information to state and private actors and, if

unlawfully withheld, such production may be compelled in the United States district courts under the authority of 5 U.S.C. § 702.

The Sheriff also relies on the principle that "[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). The subpoenas before the Court do neither of these things. This review concerns a discrete request for information, not a law that foists a mandatory, ongoing disclosure program onto the Sheriff's Department whenever it comes into contact with a particular class of persons. If such subpoenas become a regular occurrence, then some day a federal court may have a more difficult decision, but this is not that day. As the Sheriff notes, this is a unique process in the history of ICE.

## II.     Legal Authority for the Subpoenas

The Sheriff does not challenge ICE's general statutory authority to issue subpoenas.[4] Resp. at 3 ("ICE . . . has . . . subpoena authority."). On its face, 8 U.S.C. § 1225(d)(4)(A) authorizes the subpoenas. The Sheriff does not provide any statutory or prudential basis prohibiting their use in this situation. Further, the Sheriff has not established any improprieties that would prohibit the subpoenas under governing Supreme Court authority. When "'evidence sought by the subpoena was not plainly incompetent or irrelevant to any lawful purpose,'" a district court is obliged to enforce it. *CSG Workforce Partners, LLC v. Watson*, 512 F. App'x 830, 835 (10th Cir. 2013) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)).

---

[4] I note the Sheriff's argument that he is charged with enforcing local, state, and federal criminal laws, and the subpoenas are not connected with a criminal matter, which is internally inconsistent with his stated belief that at least one of the persons who are the subject of the subpoenas has been indicted. Moreover, ICE represents that its investigation is related to both civil immigration violations and criminal offenses.

## CONCLUSION

Based on the foregoing, the Petition to Enforce Administrative Subpoenas [filed February 6, 2020; ECF 1] is **granted** and the subpoenas shall be enforced. The parties shall work together to determine a deadline for compliance with the subpoenas; if they are unable to do so, they shall seek the Court's assistance by sending an email to hegarty_chambers@cod.uscourts.gov or, failing such cooperation, by filing a motion for further relief.

SO ORDERED.

Dated at Denver, Colorado this 20th day of April, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge